# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL C. WILLIAMS, EXECUTOR OF THE ESTATE OF KATHRYN M. WILLIAMS, a/k/a KATHRYN WILLIAMS, DECEASED, : Plaintiff : v. : : HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, : Defendant | : : : : : : : : : : : : | No. 17cv234 (Judge Munley) |

## **MEMORANDUM**

Before the court for disposition is a motion for summary judgment filed by the defendant, Hartford Life and Accident Insurance Company. This case arises out of a dispute between the parties regarding whether the defendant is obligated to pay accidental death insurance benefits to the plaintiff as a result of the decedent's death. The motion is fully briefed and ripe for disposition.

**Background**

In June of 2005, Kathryn Williams (hereinafter "Williams" or "the decedent") took out a life insurance policy with Hartford Life and Accident Insurance Company (hereinafter "Hartford Life" or "defendant") through her account with

Citizens Bank. (Doc. 14, Def. Stmt. of Mat. Facts (hereinafter "SOF") ¶ 1).[1] The policy, which included $1,000 basic coverage and $25,000 in supplemental coverage, provided benefits for individual accidental death and dismemberment. (Id. ¶ 3). To pay for this policy, quarterly premium payments of $8.25 began being deducted from Williams' Citizens Bank Account on June 1, 2005. (Id. ¶ 4).

Several years later, on February 18, 2011, Williams called and spoke to a representative at Hartford Life. (Id. ¶ 5). During this phone call, Williams expressed a desire to cancel her policy. (Id.) Hartford Life confirmed Williams' cancellation with a follow-up letter dated February 19, 2011. (Id. ¶ 6). As such, Hartford Life cancelled the policy, effective March 1, 2011. (Id. ¶ 7). No payments were deducted from Williams' account for this policy after December 1, 2010. (Id. ¶ 8).

On December 19, 2011, Williams died as the result of injuries suffered in a motor vehicle accident. (Doc. 1-1, Compl. ¶ 6). Michael C. Williams (hereinafter "plaintiff"), executor of Williams' estate, reported the damage and loss to Hartford Life. (Id. ¶ 7). Hartford Life denied plaintiff's claim for the accidental death of the

---

[1] For this brief factual background section, we will cite primarily to the defendant's statement of material facts as to which no genuine issue remains to be tried. As the plaintiff has not submitted his own statement of material facts, we will assume that the he generally agrees with these background facts. Where more context is needed, we will cite to the complaint.

2

decedent, and refused to pay plaintiff, citing the decedent's cancellation as its reason. (Id. ¶ 10).

Plaintiff filed a complaint against the defendant alleging breach of contract and bad faith liability on January 8, 2017 in the Luzerne County Court of Common Pleas. The defendant removed the matter to this court on February 8, 2017. Plaintiff seeks a declaratory judgment that Hartford Life must provide full insurance coverage for the accidental loss of the decedent's life as well as specific performance from the defendant.

At the close of discovery, the defendant filed the pending motion for summary judgment, bringing the case to its current posture.

**Jurisdiction**

As noted above, plaintiff initially filed his complaint in the Luzerne County Court of Common Pleas. The defendant promptly removed the matter to this court on the grounds of diversity jurisdiction. 28 U.S.C. § 1332(a).

Cases are properly brought in federal district court under the diversity statute when the action involves citizens of different states and an amount in controversy, exclusive of interest and costs, in excess of $75,000.00. See 28 U.S.C. § 1332(a). Instantly, plaintiff is a citizen of the Commonwealth of Pennsylvania. (Doc. 1, Not. of Rem. ¶ 5). The defendant is a corporation organized and existing under the laws of Connecticut with a principal place of

business in Connecticut. (Id. ¶ 6). As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED R. CIV. P. 56(C)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson,

4

477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. Id. at 324.

**Discussion**

The defendant seeks summary judgment on the breach of contract and bad faith claims pursuant to Federal Rule of Civil Procedure 56, arguing that there is no genuine dispute of material fact. Specifically, the defendant argues that the plaintiff has not developed any evidence to show that the decedent's policy was still in effect when she died, defeating both claims. We will address the breach of contract claim and the bad faith claim separately.

**I.     Breach of Contract**

Plaintiff argues that the defendant breached its policy contract with the defendant by failing to pay the accidental death and dismemberment insurance

5

proceeds to the plaintiff when the decedent died as the result of a car accident. Under Pennsylvania law, to establish a breach of contract a party must demonstrate (1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract, and (3) damages. <u>Ware v. Rodate Press, Inc.</u>, 322 F.3d 218, 225 (3d Cir. 2003). The parties here dispute the first element, the existence of a contract.

The defendant argues that it did not have an effective contract in place with the decedent when she died on December 19, 2011, because the decedent cancelled her policy on February 18, 2011. In support, the defendant has proffered an audio recording of a phone call between the decedent [2] and a customer contact representative at Hartford Life. (Doc. 15, Exhibit D, Audio Recording). Plaintiff agrees that in this recording, the decedent clearly cancels her policy with the defendant. He argues, however, that he believes she "was cancelling her auto insurance policy with Hartford Insurance" and not her accidental death and dismemberment policy. (Doc. 17, Pl.'s Br. in Opp. at 2).

A careful review of the audio recording reveals that the customer contact representative at Hartford Life explained to the decedent the policy that she sought to cancel. In the recording the representative says to the decedent: "Right

---

[2] Plaintiff does not dispute that it is indeed the decedent speaking in the audio recording.

now you have with Citizens Bank Mid-Atlantic accidental death and dismemberment insurance." (Doc. 15, Exhibit D, Audio Recording from February 18, 2011 at 1:47). The decedent is heard affirming that she does in fact have this policy. (Id. at 1:55). The representative continues to confirm the policy that the decedent wished to cancel by reviewing the policy number, the coverage parameters, and the premiums. Again, the decedent is heard affirming that this information is correct, and that she wishes to cancel the coverage. (Id. at 3:16).

At numerous points during the recording, the decedent can be heard discussing her age and giving the fact that she will no longer be driving a vehicle as the reason for cancelling her insurance. Plaintiff argues that based on this line of conversation, the decedent clearly intended to cancel her auto insurance, not her accidental death and dismemberment insurance. We are not convinced. Although plaintiff claims that the decedent did have an auto insurance policy through Hartford Life which also deducted monthly payments from her Citizens Bank account, he has provided no evidence to support this assertion.[3] Notably, plaintiff submitted the decedent's bank statements from the period when the accidental death and dismemberment policy was in force. These statements

---

[3] Plaintiff fully admits that he "has no proof or evidence" that the decedent meant to cancel her auto insurance policy "other than the recording." (Doc. 17, Pl's Br. in Opp. at 3).

7

show no withdrawals for an auto insurance policy. (Doc. 18, Exhibit J, Decedent's Citizens Bank Checking Account Statements).

Further, the representative from Hartford Life responds to the decedent after she discloses her reason for canceling her policy, and tells her that before she cancels to "keep in mind that this insurance protects [her] when [she] is at home, when [she] is working, or even when [she] is traveling outside the United States." (Doc. 15, Exhibit D, Audio Recording from February 18, 2011 at 2:50). He continues: "The reason I mention this to you. . . is because you don't need to be out of your home to be covered." (Id. at 2:59). The decedent responds that she "didn't realize that," but she still "is going to go ahead and cancel it." (Id. at 3:16). At the conclusion of the audio recording, the representative cancels the decedent's policy. The next day, Hartford Life sent a letter to the decedent confirming the cancellation. (Doc. 15, Exhibit E, Letter to Decedent Dated February 19, 2011). The bank deducted no further premiums for this policy from the decedent's account.

While we sympathize with the unfortunate set of facts before us, the record makes clear that the decedent cancelled her accidental death and dismemberment insurance policy with the defendants nearly ten months before she died. As such, we find that no contract existed between the parties at the

time of the decedent's death. We will grant summary judgment for the defendant on this claim.

## II. Bad Faith in Handling Insurance Claims

Plaintiff has also brought a bad faith claim against the defendant under 42 Pa. C.S.A. § 8371, arguing that the defendant had no reasonable or sufficient basis to deny plaintiff the proceeds of the decedent's policy. (Doc. 1-1, Compl. ¶ 28).[4] Pennsylvania has established a statutory remedy for bad faith on the part of insurance companies. "If the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%[;] (2) Award punitive damages against the insurer[;] (3) Assess court costs and attorneys fees against the insurer." 42 Pa. C.S.A. § 8371.

The term bad faith includes "any frivolous or unfounded refusal to pay proceeds of a policy." Keefe v. Prudential Property and Casualty Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000)(citing Terletsky v. Prudential Property and Casualty Insurance Co., 649 A.2d 680, 688 (Pa. Super. 1977) (quoting Black's Law Dictionary 139 (6th Ed. 1990)). "For purposes of an action against an insurer for failure to pay a claim, such conduct imparts a dishonest purpose and means a

---

[4] Plaintiff does not address his bad faith claim in his brief in opposition to defendant's motion for summary judgment.

breach of a known duty (i.e., good faith and fair dealing), through some motive of self interest or ill will; mere negligence or bad judgment is not bad faith." Id. Thus, for a plaintiff to recover under a bad faith claim, he must show "(1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." Keefe, 203 F.3d at 225.

Applying the same analysis that we did in section I, plaintiff's bad faith claim fails on the first element. The defendant did have a reasonable basis for denying the plaintiff benefits under the decedent's policy—the policy had been cancelled nearly ten months prior. As such, the defendant's refusal to pay benefits to the plaintiff was not frivolous or unfounded.

**Conclusion**

For the foregoing reasons, the defendant's motion for summary judgment will be granted. Plaintiff's request for declaratory judgment and specific performance will be denied. An appropriate order follows.

**Date: January 29, 2018**　　　　　　　　　　s/ James M. Munley
　　　　　　　　　　　　　　　　　　　　　**JUDGE JAMES M. MUNLEY**
　　　　　　　　　　　　　　　　　　　　　**United States District Court**